UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LAVERY, | No. 2:13-cv-2083 DAD AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| B. DHILLON, | |
| Defendants. | |

Plaintiff is a state prisoner proceeding with a civil rights action pursuant to 42 U.S.C. § 1983. Sole remaining defendant Dr. Dhillon has moved for summary judgment. ECF No. 247. Plaintiff, through appointed counsel, has filed an opposition, ECF No. 250 (supported by ECF Nos. 251-254). Defendant filed a reply. ECF No. 255. For the reasons that follow, the undersigned recommends that the motion for summary judgment be granted.

I.     PROCEDURAL HISTORY

Plaintiff commenced this case in pro per more than a decade ago. The action was filed in the Northern District of California and was transferred to this court in October 2013. ECF Nos. 14, 15. Plaintiff alleged in sum that his leg was paralyzed (or otherwise functionally damaged) in 2012 when a prison nurse struck his sciatic nerve while administering an injection, and that prison medical personnel including Dr. Dhillon subsequently failed to provide adequate care for the nerve damage and related pain.

The operative Third Amended Complaint was filed on September 17, 2017. ECF No. 143. After protracted pretrial proceedings, the case was narrowed to a single Eighth Amendment claim against Dhillon, ECF No. 170, and the deadlines for discovery and for dispositive motions were repeatedly extended. After defendant filed the instant motion for summary judgment, counsel was appointed to for the limited purpose of opposing the motion. ECF No. 248.[1]

## II. THE MOTION FOR SUMMARY JUDGMENT

Defendant Dr. Dhillon seeks summary judgment on the ground that the evidence does not demonstrate an Eighth Amendment violation as a matter of law. In the alternative, he seeks qualified immunity. Plaintiff counters that there is a triable issue of fact as to deliberately indifferent medical care, and that qualified immunity does not apply.

## III. LEGAL STANDARDS

### A. Summary Judgment Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

[1] Plaintiff has been represented by counsel for two previous periods during the course of the case. Counsel first appeared on plaintiff's behalf on November 1, 2016, ECF No. 117, and was granted leave to withdraw on June 6, 2018, ECF No. 168. On July 12, 2018, the court appointed counsel for the limited purpose of completing discovery, which had been significantly delayed. ECF No. 172. Different pro bono counsel was appointed for purposes of this summary judgment motion. ECF No. 248.

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

////

3

whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### B. Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of

1 treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious
2 disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration
3 in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

      C. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider (1) whether the undisputed facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The two prongs need not be decided sequentially. Id. at 236.

    IV.    EVIDENTIARY ISSUES

In opposition to summary judgment, plaintiff relied in part on excerpts of his prison medical record that had been filed in this case by plaintiff when he was in pro per. ECF No. 252 (citing records filed at ECF No. 232). The declaration of counsel accompanying plaintiff's opposition to the summary judgment motion explained that counsel had sought a declaration from the custodian of records as to the documents' authenticity, but that such declaration had not yet been obtained. ECF No. 253. Counsel asked that the court take judicial notice of the previously-filed documents "if necessary," and/or grant leave for plaintiff to supplement his opposition with a declaration from the custodian of records upon its receipt. Id. In their reply brief, defendant objected to consideration of plaintiff's exhibits on grounds the records had not been authenticated and were therefore inadmissible. ECF No. 255 at 4 n.3; see also ECF No. 255-1. Less than two weeks later, plaintiff provided the outstanding declaration together with a request for leave to supplement. ECF No. 257. Defendant filed an opposition to this request, contending both that the attempt to authenticate comes too late and that the declaration of Jayesh Kunnumal, Health

////

1  Record Technician (ECF No. 257-1), fails the technical requirements for authentication. ECF No.
2  259.
3        Plaintiff's request will be granted. "[O]nly admissible evidence may be considered by the
4  trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc.,
5  854 F.2d 1179, 1181 (9th Cir. 1988) (citations omitted). However, "[a]t the summary judgment
6  stage, [the court does] not focus on the admissibility of the evidence's form. [It] instead focus[es]
7  on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)
8  (citations omitted); see also Aholelei v. Haw. Dep't of Pub. Safety, 220 F. App'x 670, 672 (9th
9  Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary
10  judgment "which consisted primarily of litigation and administrative documents involving
11  another prisoner and letters from other prisoners" and could be made admissible at trial). In other
12  words, the court can consider evidence submitted on summary judgment if its *contents* could be
13  presented in an admissible form at trial. Fraser, 342 F.3d at 1037.
14        For this reason, the court overrules defendants' objections to the medical records at ECF
15  No. 232 and his objections to the Kunnemal Declaration (ECF No. 257-1). The medical records
16  relied on by plaintiff are properly subject to consideration here because their contents could
17  readily be made admissible at trial. The late-filed declaration of Jayesh Kunnumal, Health
18  Record Technician, ECF No. 257-1, appears to confirm this point despite any technical defect.
19  Defendant has made no affirmative argument that the documents at issue do not come from
20  plaintiff's prison medical record or that they have been altered in any way. Accordingly, the
21  "lack of authentication" argument is rejected as hyper-technical both as to the underlying records
22  and as to the Kunnemal Declaration. Plaintiff is not required to meet the formal requirements that
23  apply to the introduction of evidence at trial, he is merely limited to evidence that he will be able
24  to offer at trial under the rules of evidence.
25        The interests of justice are served by consideration of all evidence regarding plaintiff's
26  medical care, the contents of which would be—or could be made—admissible at trial.
27  Defendant's objections are overruled and the late-filed declaration of the custodian of records is
28  accepted. All medical records submitted by both parties are material to the issues raised by the

motion and will be considered. The questions is whether, in light of those records and the other evidence adduced by the parties, there is a triable issue of fact as to Dr. Dhillon's liability.

V.   UNDISPUTED FACTS

Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court upon review of the record.[2]

Plaintiff was an inmate at the California Medical Facility (CMF) during the relevant period. Defendant, Balraj Dhillon, M.D., was plaintiff's Primary Care Provider (PCP) between August 25, 2012, through February 15, 2013.[3] Plaintiff alleges that he received an injection in the right buttock on August 17, 2012, prior to commencing treatment with Dr. Dhillon. See ECF No. 232 at 83.[4] Plaintiff believes that the injection struck his sciatic nerve, and he attributes subsequent pain and numbness to the alleged sciatic injury.

Plaintiff submitted a Health Care Services Request Form on August 19, 2012, stating that he was having an adverse reaction to the injection. ECF No. 232 at 17. He reported bruising and tenderness at the injection site, and swelling to the feet and thighs. Id. This initial request did not reference numbness, tingling, muscle weakness, or a suspicion of sciatic nerve damage. Id.

On September 6, plaintiff submitted a health care services request form asking to be seen because "my feet are swollen and something is going on with the right side of my leg. I can't stand or walk that good." Id. at 18. Plaintiff was seen by a nurse the next day. The nurse

---

[2] Defendant's Separate Statement of Undisputed Material Facts is at ECF No. 247-3. Plaintiff's Separate Statement of Undisputed Facts is at ECF No. 252. Defendant's response to plaintiff's statement is at ECF No. 255-1. For ease of reference, the undersigned cites directly to the evidence of record that establishes the material facts.

[3] Defendant contends that he treated plaintiff only through November 20, 2012. See ECF No. 255-1 at 1-2; see also ECF No. 247-4 (Dhillon Decl.) at 2, ¶ 2. This assertion is belied by the record, which shows that Dr. Dhillon remained plaintiff's PCP into early 2013 even though he may not have personally provided substantial treatment after November 20, 2012. See ECF No. 232 at 72 (CDC Form 7362 dated February 15, 2013, referring to Dhillon as plaintiff's PCP). Because failure to treat is partially at issue, it is appropriate to consider the entire period as specified by plaintiff. Moreover, several material facts set forth above involved actions of Dr. Dhillon's after November 20, 2012.

[4] The contemporaneous medication administration record does not specify the site of the injection, but Mr. Lavery has averred that it was to the buttock and his testimony would be admissible at trial on the issue. The medical record indicates that other similar injections were to the buttock. See ECF No. 232 at 83, 84, 87.

assessed a "flare up" of chronic pain and referred for a routine (non-urgent) doctor's appointment. Id. at 19. On September 11, plaintiff submitted a health care services request form in which he complained that his pain medication was ineffective. Id. at 22. During the next two weeks, plaintiff submitted four more health care services request forms regarding mobility problems and pain. Id. at 23- 27. None of the September requests for health care services mentioned numbness, tingling, or suspicion of sciatica.

On September 26 and 27, plaintiff was seen on an urgent basis by providers other than Dr. Dhillon for pain in his right hip, thigh, and groin (inguinal area). Id. at 28-30.[5] Instructions were to continue with prescribed medications and keep the appointment with plaintiff's PCP that was already scheduled. Id. at 28. These records contain no mention of possible sciatica.

On October 4, 2012, plaintiff was seen by a podiatrist, Dr. Sawicki, who noted plaintiff's complaint of radiating pain in the right leg and back. Dr. Sawicki noted an assessment/diagnosis of sciatica, and ordered follow up with the PCP regarding back and hip pain. Id. at 32-33. A health care services request that plaintiff submitted on October 8, 2012, specifically requested an MRI "to see if any damage has been done to my SCIATICA." Id. at 34.

A radiology report dated October 5, 2012, reported a diagnostic impression of bilateral hip arthritis. ECF No. 247-5 at 7. Following review of the report, plaintiff was scheduled for a chronic care appointment with Dr. Dhillon. Id. at 9. It appears that defendant first saw plaintiff in person regarding the hip and leg pain on October 12, 2012. Dr. Dhillon prescribed pain medication— Nortriptyline, Taradol and Tramadol—on October 12, and again on November 7 and November 20, 2012. Id. at 11, 13-14, 16.

On October 21, 2012, plaintiff submitted a health care services request form that expressly alleged, for the first time, that a shot had been administered "really close if not in my sciatica nerve" and requesting an MRI to "find if any damage or what happened." ECF No. 232 at 35. Substantially similar requests were submitted on October 24 (id. at 36-37), October 29 (id. at 38),

---

[5] Plaintiff, when representing himself pro se, marked these documents as related to "emergency room" visits. It is clear from the content of the documents, which are CDCR forms, that plaintiff was seen on an urgent or emergency basis at a prison facility and not at an outside hospital. It appears that the records may be from the institution's TTA (Treatment and Triage Area).

October 31 (id. at 39), November 6 (id. at 40).  Plaintiff also submitted a health care appeal dated November 4, 2012, seeking "proper" treatment for sciatic nerve damage from the shot.  Id. at 90.

On November 14, 2012, plaintiff was seen on an emergency basis for pain and burning sensations.[6]  The clinician's notes state, "[Patient] denies recent injury or trauma.  Thinks it was due to a shot in the buttocks that … probably irritated his sciatic nerve….  Once I explained to pt that the distribution of current pain is not consistent with sciatica… he said 'that is what I am told.'"  Id. at 43.  A different clinical note from the same date, in a different handwriting, states: "[P]resentation consistent with neuralgia paresthetica…  Clearly not consistent with sciatica at this time."  Id. at 44.[7]

On November 15, 2012, Dr. Sawicki saw plaintiff again and noted a diagnosis of progressive sciatica.  Id. at 45.  He submitted a physician request for services seeking a nerve conduction study or EMG (electromyography).  Id. at 47.  This request was denied for lack of sufficient justifying information, by a doctor whose name is illegible on the form but was not Dr. Dhillon.  Id. at 48.  On December 28, 2012, plaintiff was seen by a nurse practitioner, FNP Champen, who covering for Dr. Dhillon.  Champen re-ordered an EMG and physical therapy, and indicated a need to "rule out possible malingering."  Id. at 60-63.  Dr. Sawicki saw plaintiff again on January 17, 2013, and again recommended a nerve conduction test for sciatic damage.  Id. at 66-67.[8]  No nerve conduction study was ever conducted.

Meanwhile plaintiff's health care appeal on the sciatica issue was denied at the first level on November 30, 2012, on grounds that clinicians had found plaintiff's pain inconsistent with sciatica, Dr. Dhillon was treating his pain, and he had been referred to "PM&R" (presumably, pain management and rehabilitation) for further evaluation.  Id. at 93.  Dr. Dhillon did not rule on the appeal at the first level, but the ruling was based in substantial part on his interview with

---

[6] Again, plaintiff labeled the records "emergency room visit."
[7] When in pro se, plaintiff identified these records as evidence that two doctors in the ER had told him his sciatic nerve was probably damaged when he had the shot.  ECF No. 232 at 10.  Plaintiff clearly misread the documents.
[8] Neither party has identified, and the undersigned has not located in the record, any documentation of the denial of these requests.  Accordingly, there is no evidence of Dr. Dhillon's involvement in the decisions.

9

plaintiff regarding the matter. Id. The appeal was denied at the second level on January 31, 2013, for substantially the same reasons, id. at 95-96, and at the Director's Level on June 12, 2013, id. at 97-98.

As for the alleged denial of crutches, on November 13, 2012, plaintiff submitted a health care services request for a walker or "something to help me walk." Id. at 42.[9] He submitted requests for crutches on November 16 and November 18. Id. at 55, 56. On November 22, plaintiff submitted a Health Care Appeal seeking crutches. Id. at 99. He submitted another health care services request form for crutches on November 26. ECF No. 247-5 at 18. Crutches were provided by Dr. Dhillon on November 27, 2012, pursuant to a nurse's order. ECF No. 247-5 at 18, 20; see also ECF No. 121 at 24. Plaintiff's appeal of the issue was partially granted at the first level of review, in that the request for crutches had already been granted. ECF No. 232 at 104.

Plaintiff's complaints about pain persisted into early 2013. He was treated for pain throughout the relevant period, though the adequacy and efficacy of that treatment is disputed.

## VI. DISCUSSION

Plaintiff bases his Eighth Amendment deliberate indifference claim against Dr. Dhillon on (1) defendant's alleged failure to provide appropriate medical care, specifically the failure to order a nerve conduction study and to diagnose and treat sciatica, and (2) defendant's failure to timely provide crutches or other assistive devices during the relevant period. Plaintiff has not identified evidence sufficient to put before a jury on either issue.

As to the failure to diagnose and treat sciatica, defendant has pointed to an absence of evidence sufficient to support a finding of deliberate indifference. The record is clear that plaintiff had multiple chronic health problems and longstanding pain issues before the August 2012 injection that he identifies as the source of sciatic nerve damages—indeed, the August 2012 injection was part of plaintiff's pre-existing pain management protocol. It is also undisputed that plaintiff was diagnosed with arthritis, an independent source of pain and mobility limitation, at the outset of his treating relationship with defendant and that Dr. Dhillon provided pain

---

[9] Although plaintiff had previously complained about his pain and referenced mobility challenges caused by the pain, this appears to be the first express request for an assistive device.

medication throughout the relevant period.[10] This context is relevant to the clinical acts and omissions at issue here, all of which involve medical judgments about what tests to order and what pain management protocols to pursue.

Defendant argues that plaintiff has identified no more than a difference of medical opinion between Dr. Dhillon and Dr. Sawicki as to the need for a nerve conduction study to confirm or rule out sciatica. Dr. Dhillon's declaration, ECF No. 247-4, does not address or even mention Dr. Sawicki's sciatica diagnosis and EMG recommendations.[11] Regarding his failure to pursue a nerve conduction study, defendant states only:

> I am aware that Mr. Lavery has complained that he was not provided diagnostic testing to determine the extent of his condition, and specifically his claim of injury to the sciatic nerve. There were no such tests available during my course of treatment, and even assuming that Dr. Lavery suffers from damage to her sciatic nerve or from an arthritic condition, or both, the treatment I prescribed, being designed to alleviate pain, was medically appropriate.

Dhillon Decl., ECF No. 247-4 at 3.

In disputing the assertion that "no such tests" were available, plaintiff does not point to any affirmative evidence of EMG availability but points to Dr. Sawicki's recommendation for a nerve conduction study. Construing Dr. Sawicki's request in the light most favorable to the non-moving party, it demonstrates that prison doctors can and do request referrals to specialists outside the prison for tests that are unavailable within the prison medical system. Sawicki's recommendation, however, does not support a conclusion that the PCP's failure to seek and

////

---

[10] As noted above, the adequacy and efficacy of that treatment is disputed. Although plaintiff repeats in opposition to summary judgment his theory that Dhillon failed to adequately treat his pain in general, the evidence adduced in response to the motion focuses on the different pain management protocol that plaintiff believes he should have received due to sciatic nerve damage.

[11] It should be noted that plaintiff has not clearly identified evidence showing that Dr. Dhillon personally made the decision not to pursue the nerve conduction study ordered by Dr. Sawicki. The initial request from Dr. Sawicki was denied by someone other than Dr. Dhillon, ECF No. 232 at 48, and the undersigned has not been directed to documentation showing who denied subsequent clinician requests. Because Dr. Dhillon was involved in the review of plaintiff's appeal of the matter, id. at 93, the court will assume for purposes of the above discussion that he was responsible. It is undisputed that defendant took no affirmative action to obtain such testing for plaintiff, and plaintiff has argued that this failure itself amounts to deliberate indifference.

1  obtain authorization for such a procedure at an outside facility was deliberately indifferent to a
2  serious medical need.
3        Defendant is correct that without more, a difference of medical opinion does not support
4  an inference of deliberate indifference. Toguchi, 391 F.3d at 1058. Accordingly, plaintiff's
5  reliance on Dr. Sawicki's diagnosis and recommendation is insufficient to defeat summary
6  judgment. Even if Dr. Dhillon's failure to conduct or obtain authorization for the testing
7  recommended by Dr. Sawicki was negligent or constituted medical malpractice, it would not
8  present a triable Eighth Amendment issue. See Farmer v. Brennan, 511 U.S. 825, 835 (1994).
9  Dr. Sawicki's opinion would support deliberate indifference only if plaintiff can identify evidence
10 that defendant's approach was "medically unacceptable." Jackson v. McIntosh, 90 F.3d 330, 332
11 (9th Cir. 1996).
12       In an attempt to raise a triable issue of material fact, plaintiff has submitted a declaration
13 from proffered medical expert Judd Landsberg, M.D. ECF No. 254. Dr. Landsberg declares that
14 plaintiff's reported symptoms of pain, numbing and tingling following the August 2012 injection
15 are "typical indicators of injury to the sciatic nerve," which is a "common injury" resulting from
16 intramuscular injections in the buttocks. Id. at 2, ¶ 3. Dr. Landsberg states that the standard
17 medical response in fall of 2012 to these complaints would have been suspected sciatic nerve
18 injury, which would typically lead to a nerve conduction study for diagnostic confirmation. Id.,
19 ¶¶ 4-5. Dr. Landsberg also states that the neuropathic pain caused by sciatica is different from
20 the pain caused by muscle or joint injury, and is treated by specific medications for neuropathic
21 pain such as Gabapentin. He opines that "[t]raditional pain medications are generally
22 ineffective." Id. at ¶ 6. He does not opine, or even imply, that the failure to ensure a nerve
23 conduction study and treat with Gabapentin was a medically unacceptable choice.
24       Were this a negligence case, Dr. Landsberg's opinion might help plaintiff. In an Eighth
25 Amendment case, however, it fails to create a triable issue. Even assuming that Dr. Dhillon's
26 ////
27 ////
28 ////

failure to order a nerve conduction study and prescribe Gabapentin[12] fell below the 2012 standard of care, that does not support an inference that he was subjectively aware that he would thereby create an excessive risk to plaintiff's health and safety. See Toguchi, 391 F.3d at 1057. To the contrary, defendant's sworn statement that he would have provided the same pain treatment even with a sciatica diagnosis indicates his professional judgment that different medications would not make a difference to plaintiff's ongoing pain. In that case, testing for nerve damage could serve no purpose. Even if Dr. Dhillon was 100% wrong about the utility of an EMG and appropriate treatment of nerve pain, his subjective belief that what he was doing was sufficient to address plaintiff's serious medical needs defeats a finding of deliberate indifference. Without a culpable state of mind, there is no Eighth Amendment liability. Wilson v. Seiter, 501 U.S. 294, 299 (1991). The medical records available to Dr. Dhillon included both Dr. Sawicki's findings and the contrary conclusions of two other clinicians that plaintiff's pain symptoms were inconsistent with sciatica. ECF No. 232 at 43-44. This fact further undermines plaintiff's attempt to support an inference of deliberate indifference based on the Sawicki records and plaintiff's complaints.

As noted above, nothing in the Landsberg Declaration indicates that either the failure to secure a nerve conduction study or the failure to prescribe Gabapentin (or a similar drug that specifically targets neuropathic pain) falls so far below the minimum standard of care that it can be considered "medically unacceptable." See Jackson, 90 F.3d at 332. Without an evidentiary basis for that conclusion, the opinions of Dr. Sawicki and Dr. Landsberg cannot create a triable issue as to Dr. Dhillon's liability. See Toguchi, 391 F.3d at 1058.

As for the denial of crutches, the undisputed evidence shows that they were provided approximately a month after plaintiff first requested assistive devices for mobility.[13] Plaintiff has

---

[12] Here the court assumes for purposes of discussion that a nerve conduction study would have confirmed sciatic nerve damage. Plaintiff has not identified evidence that makes this a more than speculative proposition, even accepting Dr. Landsberg's statement that plaintiff's symptoms are consistent with such damage. Dr. Landsberg never evaluated plaintiff and does not purport to diagnose him. At least two clinicians who saw plaintiff during the relevant period found that his pain was inconsistent with sciatic nerve damage. ECF No. 232 at 43, 44.
[13] Plaintiff argues in conclusory fashion that the delay should be measured from the August 2012 injection and initial complaints of an adverse reaction, but the evidence does not support this.

not identified evidence that could support a conclusion he was significantly harmed by the delay. Without such evidence, a delay in treatment does not rise to the level of an Eighth Amendment violation. Jett, 439 F.3d at 1097-98. And in any event, as with the sciatica diagnosis and treatment issue, the evidence does not support an inference that Dr. Dhillon acted with a culpable state of mind. Without an evidentiary basis for the requisite state of mind, plaintiff does not have a triable case even if the mobility limits caused by leg pain constitute sufficient harm from the delay.

In sum, the claim against Dr. Dhillon fails for lack of evidence demonstrating a deliberately indifferent state of mind. Plaintiff's evidence, construed liberally in his favor, could establish no more than negligence. Accordingly, defendant is entitled to summary judgment in his favor. Because plaintiff's claim fails on the merits, there is no need to separately address qualified immunity.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's Request to File Supplemental Exhibit, ECF No. 257, is GRANTED.

For the reasons explained above, it is FURTHER RECOMMENDED that defendant's motion for summary judgment be GRANTED and that final judgment be entered in Dr. Dhillon's favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////
////
////
////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 25, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE